**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**KELLY BUTLER,**

    **Plaintiff,**

**v.**                                                      **CASE NO. 8:08-CV-678-T-EAJ**

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security Administration,**

    **Defendant.**
_____/

## **FINAL ORDER**

Plaintiff brings this actions pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for period of disability and disability insurance benefits ("DIB"). The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case.[1]

In an action for judicial review, the reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2006). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 10).

evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).[2]

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 587 (11th Cir. 1987).

## **Background**

On August 25, 2003, Plaintiff filed applications for a period of disability and DIB benefits, alleging disability beginning on May 8, 2003. (T 28) Plaintiff's claims were denied initially and upon reconsideration. (Id.) Following a July 13, 2007 administrative hearing (T 371-95), the ALJ denied Plaintiff's applications in an August 24, 2007 decision. (T 28-35) The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (T 4-6) Plaintiff filed a timely petition for judicial review of the Commissioner's denial after exhausting all administrative remedies (Dkt. 1). The Commissioner's decision is ripe for review under the Act.

At the time of the hearing, Plaintiff was forty-five (45) years old and had a high school education with some community college. (T 375) Her past work experience included work as a mail handler for the United States Postal Service. (T 376, 384)

---

[2] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

2

To determine if Plaintiff was disabled, the ALJ performed a five-step evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on May 8, 2003, and that Plaintiff met the insured status requirements through December 1, 2008. (T 30) Second, while Plaintiff suffered from a severe combination of impairments, including chronic myofascial pain, fibromyalgia, and depression, these impairments, whether considered singly or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T 30) Third, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a wide range of sedentary work.[3] (T 34) Fourth, based on Plaintiff's RFC, the ALJ found that Plaintiff was not capable of performing her past relevant work. (Id.) Considering the testimony of vocational expert ("VE") Nicholas Fidanza, the ALJ determined Plaintiff could work as a change account clerk, order clerk, and surveillance monitor clerk. (Id.) Accordingly, the ALJ concluded that Plaintiff was not disabled at any time through the date of the decision and denied Plaintiff's claim for period of disability and DIB under the Act. (T 35)

## Discussion

Plaintiff argues the ALJ erred by (1) not properly weighing Plaintiff's treating physician's opinions; and (2) dismissing Plaintiff's complaints of pain (Dkt 15 at 7-10).

### I.     Treating Physician's Opinions

Plaintiff submits that the ALJ improperly weighed the opinions of Plaintiff's treating physician, David Wall, M.D. ("Dr. Wall").

---

[3] The ALJ specifically found that Plaintiff "can lift and carry ten pounds and sit six hours out of an eight-hour workday. [Plaintiff] can stand and walk two hours out of an eight-hour workday." (T 31)

The testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). Good cause exists where a physician's opinion is not bolstered by the evidence, the evidence supports a contradictory finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the nature and extent of the treatment relationship, medical evidence supporting the opinion, consistency with the record on the whole, and other factors. 20 C.F.R. § 404.1527(d).

"[A] treating physician's testimony can be particularly valuable in fibromyalgia cases, where objective evidence is often absent . . ." Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (per curiam). Due to "the unavailability of objective clinical tests, it is difficult to determine the severity of the condition and its impact on one's ability to work." Morrison v. Barnhart, 278 F.Supp.2d 1331, 1335 (M.D. Fla. 2003). The disease is "generally diagnosed mostly on an individual's described symptoms." Moore, 405 F.3d at 1212. The signs of fibromyalgia are primarily tender points on the body. Mackie v. Astrue, No. 1:07-CV-98-MP-WCS, 2008 WL 719210, at *9 (N.D. Fla. Mar. 11, 2008). "It is relevant to the weight of a treating physician's opinion that he or she have monitored the effectiveness of various therapies and found that they failed to provide any significant improvement." Id. (internal quotation marks and citation omitted).

Dr. Wall, who specializes in pain management at the Lakeland Spine Center, treated Plaintiff from 1995 through 2007. (T 276-78, 282-332, 360-70) The record contains Dr. Wall's treatment

4

notes from at least 35 of Plaintiff's office visits from 2002 through 2006 as well as numerous letters and reports from Dr. Wall describing Plaintiff's worsening condition.

On May 10, 2007, Dr. Wall completed an evaluation form provided by Plaintiff's lawyer.[4] (T 360-61)  Dr. Wall opined that Plaintiff could not perform a 40-hour-per-week job that required her to sit for six hours out of an eight-hour work day, walk and stand some of the time, and lift no more than ten pounds at a time.[5]  (Id.)

There is no evidence from any other medical source contradicting Dr. Wall's diagnosis of fibromyalgia and chronic myofascial pain.  In fact, the ALJ found both conditions to be severe impairments.   The ALJ stated four reasons for not granting "significant weight" to Dr. Wall's opinion that Plaintiff is disabled and cannot perform activities associated with a wide range of sedentary work: (1) in January 2001, Dr. Wall stated that Plaintiff was able to work a six to eight hour work day; (2) Plaintiff did not comply with the work restrictions Dr. Wall placed on her; (3) Plaintiff stopped taking her prescribed medications and stopped seeking treatment for a period of time; and (4) Plaintiff's activities undermine her complaints of pain and fatigue. (T 34) For the reasons stated hereafter, the reasons cited by the ALJ do not provide substantial evidence and remand is required on this issue.

First, Dr. Wall's January 2001 opinion was rendered over two years prior to Plaintiff's alleged onset date and is consistent with his later opinion of Plaintiff's limitations.  Dr. Wall approved Plaintiff's return to work in January 2001 for six to eight hours per day under certain

---

[4] Apparently Dr. Wall also saw Plaintiff in his office on this date, although his treatment notes are not in the record. (See T 374)

[5] This description matches the description of sedentary work contained in the Code of Federal Regulations. See 20 C.F.R. § 404.1567(a).

5

conditions "previously outlined, including the recommendations as per Dr. Schwartz's report dated October 31, 2000." (T 324) However, Dr. Wall's extensive treatment notes from that point forward, reflect that Plaintiff's condition worsened. (T 276-323, 360-70) In fact, during her twelve office visits to Dr. Wall in 2001, Plaintiff reported constant pain to the point that Dr. Wall informed Plaintiff's supervisor several times that Plaintiff should not work for days or a week at a time. (T 309, 316, 319) From that point forward, Dr. Wall treated Plaintiff with anti-inflammatories, muscle relaxants, a long list of pain medications, and low dose anti-depressants. (See T 288) Plaintiff also underwent massage therapy, acupuncture, chiropractic care, physiotherapy, and trigger point injections at Dr. Wall's direction. (See id.)

In June 2002, Dr. Wall noted that Plaintiff's "chronic myofascial pain syndrome [] appears to be developing into complete fibromyalgia syndrome." (T 301) Dr. Wall diagnosed Plaintiff with fibromyalgia in April 2003 (one month before Plaintiff's alleged onset date) and recommended that Plaintiff not return to work. (T 288-89) He wrote:

> Unfortunately, [Plaintiff] has come to the point where she is no longer able to work, even under restricted conditions, as this markedly exacerbates her pain symptoms, and with increasing pain symptoms she develops further symptoms of depression. I have been unable to control her pain, even with the use of all the modalities [described above]. Part of this is due to the fact that she does exacerbate her symptoms under work conditions, even restricted work conditions. In fact, when she has had periods of total rest which has occurred over the last few years at times, I have seen significant improvement in her symptoms.

(T 289)

The ALJ cited Plaintiff's noncompliance with Dr. Wall's work restrictions prior to Plaintiff's 2003 onset date as the second reason for rejecting Dr. Wall's assessment. (T 34) In 2001 and 2002, Plaintiff attempted to continue working as a mail handler despite Dr. Wall's advice that she move to a different position. (See T 308) Plaintiff explained that, even though her employer did not

6

adhere to Dr. Wall's instructions to limit her duties, she had worked as a mail handler for eighteen and a half years and "was trying to make 20 years" to receive certain benefits upon retiring. (T 384) She finally heeded Dr. Wall's advice and left her job before she reached the twenty-year mark. (Id.) The fact that Plaintiff's symptoms were exacerbated by attempts to work prior to her 2003 onset date is not contrary to Dr. Wall's later assessments.

The ALJ also rejected Dr. Wall's opinion because Plaintiff eventually stopped taking the majority of her prescribed pain medications (T 34, 276) Dr. Wall reported that once Plaintiff stopped working and minimized her activities, he was "able to wean her off narcotic medication" that appeared to be impacting the health of her liver. (T 277) Plaintiff also reported difficulty concentrating while on her pain medication. (T 276) During an emergency room visit in May 2003 for generalized body pain, Plaintiff reported a "staggered gait" possibly from her use of pain medications. (T 239)

Further, although trigger point injections sometimes helped Plaintiff, there were more instances of no improvement following treatments. (T 285-89, 364-65) For example, on October 9, 2002, Dr. Wall noted that Plaintiff "did not respond to the last set of trigger point injections with any long term relief." (T 295) On April 14, 2004, Dr. Wall performed seven trigger point injections after finding "multiple trigger points through [Plaintiff's] left trapezii region." (T 287) Although Plaintiff "tolerated the procedure well", she returned to Dr. Wall less than one month later, with "extensive trigger points throughout her upper back, mid back area and through the quadratus lumborum in the low back." (T 285) Thus, the ALJ did not have good cause to reject Dr. Wall's opinion based on Plaintiff's decision to stop taking certain medications. See Mackie, 2008 WL 719210, at *11 (noting there was no medical evidence that a more aggressive treatment for

7

claimant's fibromyalgia would have helped).

The ALJ also rejected Dr. Wall's opinion because Plaintiff did not seek treatment from May 2006 to May 2007. (T 34)  Under the circumstances, this fact alone is not good cause for rejecting Dr. Wall's opinion.  As the ALJ's decision does not state to what extent he relied on Plaintiff's gap in treatment in rejecting Dr. Wall's opinion and in discrediting Plaintiff's complaints of pain, this alone requires remand for clarification.  Nor does the ALJ's decision reflect whether he credited Plaintiff's testimony regarding her activities during the gap in treatment.

Plaintiff explained that she did not seek treatment between May 2006 and May 2007 because she was traveling back and forth to North Carolina to be with her ailing mother. (T 374) During these months, Plaintiff testified, she was providing her mother mental support only and did not seek medical treatment.[6] (T 374-75, 380)  Further, despite this one-year time period, Plaintiff sought treatment regularly and often.  Dr. Wall's treatment notes trace Plaintiff's increased pain and discomfort over the previous twelve years and specifically note Plaintiff's decreased pain when she was on medical leave from work. (T 253, 276-332, 360-70)

After diagnosing Plaintiff with fibromyalgia in April 2003, Dr. Wall recommended that Plaintiff be placed on total disability. (T 289)  He prescribed intermittent trigger point injections, massage therapy, and pain medications. (T 286, 289)  He advised Plaintiff to perform stretching exercises designed to minimize pain. (T 289)  He assessed that Plaintiff should lift no greater than five pounds, limit her bending and twisting motions, and do no pushing or pulling. (Id.)  Dr. Wall also noted that these limitations were "ongoing and I cannot predict if at any point in the future they

---

[6] The ALJ discredited Plaintiff's complaints of pain due in part to her ability to travel to North Carolina and back without seeking medical treatment afterwards. (T 34) This is discussed infra.

8

will change." (Id.) Dr. Wall treated Plaintiff again in August and December 2003, each time administering trigger point injections. (T 368-69) He noted in August 2003 (after administering trigger point injections) that Plaintiff "is doing much better since she left work" (T 369), although Plaintiff complained in December 2003 of "periods of worsening." (T 368) In December 2003, Dr. Wall found that Plaintiff suffered from "intermittent cervical spasm of moderate degree" and "myofascial trigger points – extensive upper torso." (T 253)

On May 12, 2004, Dr. Wall treated Plaintiff for "severe upper back and low back pain." (T 285) Dr. Wall noted "extensive trigger points throughout her upper back, mid back area and through the quadratus lumborum in the low back." (Id.) On May 19, 2004, Plaintiff returned for a follow-up examination, during which Dr. Wall observed that Plaintiff "is doing better than the last time I saw her." (T 284) In July 2004, Dr. Wall noted on a worker's compensation evaluation that Plaintiff's pain had been unresponsive to treatment and that she had permanent impairment ratings of three percent cervical and three percent thoracic. (T 370) After an office visit in December 2004, Dr. Wall reported: "The major objective findings are trigger points that have been objectively identified as persistent through the course of her care. She does respond to trigger point injections as well as avoidance of activities that exacerbate her pain." (T 278) He found no significant upper or lower extremity pain, numbness, or weakness but noted that Plaintiff complained of pain throughout the neck, upper shoulder area, and middle and lower back. (T 277) Dr. Wall stated that Plaintiff's symptoms are exacerbated by activities involving any type of persistent lifting or use of upper extremities and that Plaintiff could not use her upper extremities for lifting or carrying on any persistent basis. (T 278) Dr. Wall amended this treatment note after treating Plaintiff in January 2005

9

to include the restriction that Plaintiff move once per hour. (T 276)[7]  He also agreed that the amount of pain she was experiencing would impact her concentration. (Id.)  According to Dr. Wall, Plaintiff's complaints were consistent with his experience treating other fibromyalgia and chronic pain patients. (Id.)

Dr. Wall saw Plaintiff four times in 2005, noting Plaintiff's complaints of pain at each visit. (T 276, 364-66)  He indicated in March 2005 that Plaintiff was "overall doing better but today is exacerbated by multiple trigger points throughout her upper torso." (T 366)

In 2006, Dr. Wall saw Plaintiff only once, in May, when he noted numerous trigger points and performed trigger point injections. (T 362-63)  He found that "her current prognosis is unchanged." (T 363)  Dr. Wall's next assessment came in May 2007, when he opined that Plaintiff could not perform a wide range of sedentary work. (T 360-61)

In May 2006, Dr. Wall noted: "[Plaintiff] presents today with her usual complaints of pain in the neck, upper back to mid back region. This waxes and wanes in intensity, worsening with periods of activity, especially when she uses her upper extremities." (T 362)  His progress notes before 2006 demonstrate this waxing and waning, with Plaintiff responding temporarily to trigger point injections, but suffering exacerbations with increased activity. (See T 295, 301-02)  Plaintiff's periods of improvement, in conjunction with her periods of increased pain and debilitation, are consistent with Dr. Wall's treatment notes and his May 2007 physical assessment. See Davis v. Astrue, No. 07-11648, 287 Fed. App'x 748, 755 (11th Cir. July 9, 2008) (unpublished).  Plaintiff's one-year gap in treatment from May 2006 until May 2007 does not, in and of itself, undercut Dr. Wall's opinion, especially as it drew from over a decade of treatment history.

---

[7] The ALJ did not mention these restrictions in formulating Plaintiff's RFC.

The ALJ's final reason for rejecting Dr. Wall's assessment was because Plaintiff's testimony regarding her pain and fatigue was not credible. (T 34) A discussion of this issue implicates Plaintiff's second argument that the ALJ erred in rejecting Plaintiff's complaints of pain (Dkt. 15 at 8).

The ALJ summarized the Plaintiff's testimony as follows: "every day she was in pain and uncomfortable." (T 33) He found this inconsistent with Plaintiff's testimony that she took her dog for walks, performed chores, and preferred standing. (Id.) He also found this inconsistent with her ability to travel back and forth to North Carolina without seeking medical treatment afterwards. (T 34)

While testifying that she was in pain and uncomfortable every day, Plaintiff also stated that her pain varied day-to-day and depended on her activities. (T 381-82) Plaintiff testified that she generally has three bad days and four good days per week. (T 385) On good days, she stated she could go grocery shopping, but that this would later cause her pain (T 382); on bad days, she testified, "it's hard to walk." (T 381) On some days, Plaintiff testified, "just brushing [her] hair" is difficult. (T 376-77) Some days she "can stand longer than other days" but she is "never comfortable"; (T 381) she described her pain as "constantly feel[ing] like [she has] a wet suit on that's too tight." (T 376) Further, while she was visiting her mother (who was being treated for cancer) in North Carolina in 2007, Plaintiff testified that she did not perform physical chores and instead sat beside her mother's bed and offered mental support. (T 374-75, 380) Although Plaintiff made the drive from Florida to North Carolina by herself once, her brother drove her another time. (T 375)

The ALJ also found Plaintiff's testimony inconsistent with a 2004 consultative psychiatric

11

evaluation of Plaintiff completed by N. Kirmani, M.D. ("Dr. Kirmani"), which noted Plaintiff was able to cook, go to the store, perform light chores, listen to music, and read self-help books. (Id.; T 279-82) Dr. Kirmani's 2004 evaluation addressed Plaintiff's complaint of depression, an impairment not at issue here. (T 279-81) However, the description of Plaintiff's daily activities on the evaluation is consistent with her testimony. The evaluation states that "when [Plaintiff] leaves the house she usually goes to the store" and that "she was in Wal-Mart a few weeks ago." (T 279) It notes that "usually her husband buys the groceries." (Id.) Plaintiff reported she could do light chores such as making the bed or washing the dishes and could take care of her personal grooming needs. (T 279-80) She stated she "usually spends the day in pain or doing exercises [designed to help alleviate pain]," and that she also watches television and movies, listens to Christian music on the radio, and reads self-help books. (T 279) Thus, what Dr. Kirmani reported is not substantially inconsistent with Plaintiff's testimony.

In conclusion, in light of Dr. Wall's extensive medical records documenting Plaintiff's limitations and complaints and Plaintiff's testimony of her chronic pain, the reasons the ALJ rejected Dr. Wall's May 10, 2007 opinion are not supported by the record. Cf. Peters v. Astrue, 232 Fed. App'x 866, 872 (11th Cir. 2007) (per curiam) (unpublished) (affirming ALJ's rejecting of treating physicians' opinion that claimant was disabled because fibromyalgia treatment records were inconsistent with physicians' statements on evaluation forms).

The case is remanded for further consideration of Dr. Wall's opinion in light of Plaintiff's testimony regarding her daily activities and pain, including her activities from May 2006 and May 2007. On remand, if the ALJ finds that Plaintiff is not disabled and that finding is based, in part, on the time period after May 2006, the ALJ shall determine whether Plaintiff was disabled under the Act

during any period of twelve months or more following her disability onset date of May 8, 2003. See 20 C.F.R. §§ 404.1505(a), 404.1509.

## II. Plaintiff's Subjective Complaints of Pain

Plaintiff also contends that the Commissioner improperly discounted Plaintiff's complaints of pain and fatigue and misconstrued her testimony about her daily activities. (Dkt. 15 at 9).

The Eleventh Circuit applies a three part "pain standard" when evaluating subjective complaints of pain. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Under this standard, the plaintiff must produce (1) evidence of an underlying medical condition, and either (2) objective medical evidence confirming the severity of the pain resulting from the medical condition, or (3) evidence that the condition is so severe that it can reasonably be expected to cause the alleged pain. Id.

Fibromyalgia can prove difficult to assess under the court's pain standard because its causes are unknown and its symptoms are almost entirely subjective. See Morrison, 278 F. Supp. 2d at 1335. Moreover, this condition can produce good days and bad days, with unpredictable daily activities. See generally Davis, 287 Fed. App'x at 761-62.

When evaluating a claimant's subjective symptoms, the ALJ must consider: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms. See 20 C.F.R. § 404.1529(c)(3)(i)-(iv).

In this case, the ALJ made specific reference to the pain standard. However, in finding Plaintiff's statements not credible (T 34), the ALJ relied on discrepancies between Plaintiff's

description of her daily activities, which the ALJ found inconsistent with her complaints of pain and assessments made by Dr. Wall in 2001 and by Dr. Kirmani. (T 33)  As explained in the previous section, the evidence cited by the ALJ requires further clarification on remand.  Given the finding that Plaintiff had multiple severe impairments – chronic myofascial pain, fibromyalgia, and depression – and due to the need for further evaluation of Dr. Wall's restrictions, it is necessary that the ALJ, on remand, again evaluate Plaintiff's credibility under the proper standards and make specific findings about whether her impairments could reasonably be expected to cause the symptoms and restrictions she testified about at the hearing.

## Conclusion

For the reasons stated above, the decision of the Commissioner cannot be affirmed based on the present record and remand is required.  In reaching this conclusion, however, this court expresses no views as to what the outcome of the proceedings should be.  Each side shall have the opportunity to present additional evidence on the issues remaining for determination.

Accordingly, it is **ORDERED** and **ADJUDGED** that:

(1) the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further administrative proceedings consistent with the foregoing; and

(2) the Clerk of Court shall enter final judgment in favor of Plaintiff pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand" and close the file.  Shalala v. Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993).  The final judgment shall state that any motion for attorneys' fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits.  See Bergen v. Comm'r of Soc.

Sec., 454 F.3d 1273, 1278 n.2 (11th Cir. 2006).

**DONE** and **ORDERED** in Tampa, Florida on this 25th day of September, 2009.

*[signature: Elizabeth S. Jenkins]*
ELIZABETH A JENKINS
United States Magistrate Judge